**Harry Walter VOEGE et al.,**
**Plaintiffs,**

**v.**

**Frederick W. ACKERMAN et al.,**
**Defendants.**

**No. 70 Civ. 5776.**

United States District Court,
S. D. New York.

Aug. 22, 1973.

Charles Trynin, New York City, for plaintiffs.

Seward & Kissel, New York City, for defendants The Greyhound Corp. and Armour and Co.

Lovejoy, Wasson, Lundgren & Ashton, New York City, for defendant General Host Corp.

## OPINION

EDWARD WEINFELD, District Judge.

The motion by defendants General Host, Greyhound and Armour to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted; to dismiss under Rule 12(b)(1) for lack of federal jurisdiction over the subject matter; and, in the alternative, for summary judgment, is denied except as to the second derivative cause of action, which is dismissed. Plaintiffs' motion for partial summary judgment as to liability is denied.

It is well established that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [1] Defendants contend that since the merger ratio provided plaintiffs with Greyhound stock having a fair market value which exceeded the fair market value of their Armour securities, they have not suffered any out-of-pocket loss and are barred from recovery by the principle that the "benefit of the bargain" is not available to Securities Exchange Act plaintiffs. [2] However, the Supreme Court has observed with respect to the remedies available in cases where proxies necessary to approval of mergers are obtained by a materially misleading solicitation: "Where the defect in the proxy solicitation relates to the specific terms of the merger, the district court might appropriately order an accounting to ensure that the shareholders receive the value that was represented as coming to them." [3] Nothing said in Zeller v. Bogue Electric Manufacturing Corp., [4] or Levine v. Seilon, Inc., [5] which did not involve mergers, forecloses the possibility that plaintiffs might be entitled to the value which defendants represented they would receive. [6] Whether such relief would be appropriate can only be determined upon a trial on the merits which will develop all the relevant matters.

Defendants also make the closely related argument that, since within a short time after the alleged misrepresentations plaintiffs could have sold the Greyhound stock which they received under the merger for an amount in excess of any sum they claim as damages in this action, they are barred from recovering damages. The only federal case cited in support of this proposition, however, is Zeller, [7] which only approves the much more obvious and modest proposition that a plaintiff may be fully compensated by the defendant's voluntary and complete payment of the alleged damages. Here the contention is that the fortuitous rise in the market by itself eliminated plaintiffs' alleged damages. In effect, by retaining the Greyhound shares received pursuant to the merger, Armour stockholders elected to make a new investment of the merger proceeds with the attendant risk of profit or loss. [8] Under these circumstances, it cannot be said upon the present record that increases in the value of Greyhound stock subsequent to the effective date of the merger necessarily immunize defendants' alleged wrongdoing and eliminate the possibility of recovering damages.

The third contention pressed by defendants is that plaintiffs are unable to establish a causal relationship between the alleged violations and the alleged injury because Greyhound, the holder of some 86% of Armour shares, had the power to approve the merger without so-

1. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. *See* Zeller v. Bogue Elec. Mfg. Corp., 476 F.2d 795, 801–802 (2d Cir. 1973); Levine v. Seilon, Inc., 439 F.2d 328, 334 (2d Cir. 1971).

3. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 388, 90 S.Ct. 616, 623, 24 L.Ed.2d 593 (1970).

4. 476 F.2d 795 (2d Cir. 1973).

5. 439 F.2d 328 (2d Cir. 1971).

6. *Cf.* Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281 (2d Cir. 1973).

7. 476 F.2d 795, 802 (2d Cir. 1973).

8. *Cf.* Hotaling v. A. B. Leach & Co., 247 N.Y. 84, 93, 159 N.E. 870, 873 (1928).

liciting proxies from minority stockholders. This question was expressly left open by the Supreme Court in Mills v. Electric Auto-Lite Co.[9] Although at least one court [10] has adopted defendants' contention, the recent decisional trend supports the proposition that even where the majority controls a sufficient number of shares to approve a transaction without any vote from the minority, the proxy solicitation might be sufficiently related to the transaction to satisfy the causation requirement.[11] Against the background of the liberalization of the causation requirement reflected by these cases, it cannot be said that the fact defendant Greyhound owned an overwhelming majority of Armour shares precludes plaintiffs, at this stage of the litigation, from establishing their claim.

■ In addition to the matters considered above, defendants also contend that plaintiffs fail to establish a violation of Rules 10b–5 or 14a–9 because they have not sufficiently established reliance, scienter, materiality or that the statements complained of were false or misleading. But the complaint contains such allegations and they present questions of fact which are not eliminated by the affidavits submitted by the parties. Their resolution must await a trial upon the merits.[12] The defendant General Host further argues that the allegation that it entered into a conspiracy with Greyhound and Armour to deprive Armour minority stockholders, by means of misleading proxy statements and other devices, of their rights under the Host-Greyhound Agreement fails to state a claim upon which relief may be granted. It has recently been reiterated, however, that "one who knowingly participates in or joins in an enterprise whereby a violation of a fiduciary obligation is effected is liable jointly and severally with the recreant fiduciary."[13] Although conspiracies are often easier to plead than to prove, it cannot be said that the complaint fails to state a cause of action against General Host under the federal securities laws. Since it is clear that a trial on the merits of plaintiffs' federal claims will be necessary, it would serve no purpose to pass upon defendants' motions to dismiss or, in the alternative, for summary judgment in regard to the pendent claims arising under state law, which are closely intertwined with the federal claim and are predicated upon the same factual allegations.[14]

■ It is clear, however, that the second (derivative) cause of action must be dismissed because plaintiffs lacked standing to bring a derivative action on behalf of Armour on December 31, 1970, the date they commenced this action, since they had ceased to be stockholders of Armour on December 28, 1970, the date of the merger. Under applicable Delaware law, a merged corporation and its stockholders lose the right to sue derivatively.[15]

■ Turning to plaintiffs' motion for partial summary judgment declaring defendants' liable, this must be denied not only because, as discussed above, this action presents several difficult questions of law which can only be resolved upon a

9. 396 U.S. 375, 385 n. 7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)..

10. Barnett v. Anaconda Co., 238 F.Supp. 766, 770–774 (S.D.N.Y.1966).

11. See Heyman v. Heyman, 356 F.Supp. 958, 966–968 (S.D.N.Y.1973) ; Laurenzano v. Einbender, 264 F.Supp. 356 (E.D.N.Y.1966) ; cf. Popkin v. Bishop, 464 F.2d 714, 720 (2d Cir. 1972).

12. See Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir. 1968) (en banc), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed. 2d 219 (1969).

13. Schein v. Chasen, 478 F.2d 817 at 822 (2d Cir., 1973), quoting, Oil & Gas Ventures —First 1958 Fund Ltd. v. Kung, 250 F.Supp. 744, 749 (S.D.N.Y.1966).

14. See Taylor v. Rederi A/S Volo, 374 F.2d 545, 549 (3d Cir. 1967) ; Kollsman Instrument Corp. v. Astek Instrument Corp., 225 F.Supp. 534, 535 (S.D.N.Y.1964).

15. Basch v. Talley Industries, Inc., 53 F.R.D. 9, 11–12 (S.D.N.Y.1971) ; Heit v. Tenneco, Inc., 319 F.Supp. 884, 886 (D.Del.1970).

complete record, but also because there are sharp factual conflicts concerning an issue going to the very heart of plaintiffs' case—whether defendants complied with Section 9(g) of the Greyhound-Host Agreement. That section provided that, prior to May 14, 1971, Greyhound would enable the Armour minority stockholders to obtain cash or securities in an amount per Armour share at least equal to the amount per Armour share that Greyhound paid to Host under the agreement. In December 1970, pursuant to the terms of the Greyhound-Armour merger, Greyhound offered the Armour minority stockholders 3.25 Greyhound shares for each of their shares of Armour. Whether that offer satisfied the requirements of Section 9(g) depends on what method is used to determine the value of the securities that Greyhound paid to Host, and on what date is chosen to determine the value of 3.25 shares of Greyhound. At the very least, the affidavits submitted by the parties leave open the question whether, as of May 14, 1970, no value should be attributed to the Greyhound warrants paid to Host, as defendants contend, or whether the warrants had a value of $3.00 each, as plaintiffs maintain. In addition, plaintiffs contend that the 3.25 Greyhound shares should be valued at their market value on May 14, 1970, the date Greyhound paid Host for the Armour shares, while the defendants urge that the shares should be valued at their market value either on December 28, 1970, the date when the merger became effective, or on some later date when the Armour minority stockholders actually received Greyhound stock pursuant to the terms of the merger.

In sum, this is a case "where summary judgment is too blunt a weapon with which to win the day, particularly where so many complicated issues of fact must be resolved in order to deal adequately with difficult questions of law which remain in the case." [16]

Defendants' motion is granted only to the extent of dismissing the second derivative cause of action and is otherwise denied; plaintiffs' motion is denied.

16. Miller v. General Outdoor Advertising Co., 337 F.2d 944, 948 (2d Cir. 1964); *cf.* United States v. Bethlehem Steel Corp., 157 F.Supp. 877 (S.D.N.Y.1958).