775 So.2d 368 (2000)
Robert AYER and Audree Ayer, Appellants,
v.
Melvin BUSH, Appellee.
No. 4D99-3330.
District Court of Appeal of Florida, Fourth District.
November 15, 2000.
Rehearing Denied January 19, 2001.
*369 James A. Freese, Stuart, for appellants.
Julie K. Oldehoff of Grazi & Gianino, Stuart, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
This case, an action on a putative written contract for the sale of a vacant lot, was previously before this court to review a final judgment in which the trial court had found that the parties had not formed a binding contract due to the vendee's failure to accept the vendors' offer in the manner specified for acceptance. We reversed, see Bush v. Ayer, 728 So.2d 799 (Fla. 4th DCA), rev. denied, 744 So.2d 452 (Fla.1999), holding that there was an enforceable contract because the vendors had waived strict compliance with the specified manner of acceptance. Upon remand, the trial court entered a new final judgment entitled "Final Judgment Consistent With Mandate," by which the vendee was granted specific performance of the contract. The present appeal is from that judgment and from the separate order granting fees and costs.
Our review of the briefs and the record convinces us that in all likelihood the trial court construed our holding in Bush v. Ayer ("that the parties had an enforceable contract") as precluding the trial court, upon remand, from further considering other issues bearing on the validity of the contract, or for that matter, issues pertaining to the contractual rights and obligations of the respective parties. Because such a construction would effectively frustrate the intent of our mandate, we reverse the judgment and the order awarding fees and costs consequent therefrom, and remand for further proceedings.
Melvin Bush, the present appellee, was the vendee under a written contract for the sale of a vacant lot (Lot 13) adjacent to his property in Port St. Lucie. That contract arose out of negotiations initiated by Bush after he was advised by a real estate broker that the lot was owned by Robert Ayer and Audree Ayer, his wife, the present appellants, who lived in Ohio. Bush arranged for his attorney to prepare and send to Ohio an unsigned contract in which Bush was named as buyer and appellants were named as sellers. Appellants, who asserted that the lot had been purchased some 17 years before and that they mistakenly thought the proposed contract correctly reflected title in their names only, made changes to the proposed contract concerning allocation of certain expenses and faxed a copy to their Florida attorney. The latter, in turn, sent it to Bush's attorney with a written notation that if the changes were approved by Bush, the original of the contract would then be delivered for Bush's signature. Bush came to his attorney's office and approved the conditions, but rather than waiting until the original of the contract was delivered as instructed by appellants' attorney, he proceeded to sign the facsimile copy. His attorney promptly informed appellants' attorney that the contract had been signed and that the title company would proceed with preparation of closing documents. The title company, upon ascertaining that *370 the title to Lot 13 was vested in the names of Robert Ayer, Audree Ayer, and Irene Malkus (Mrs. Ayer's mother) as joint tenants with right of survivorship, forwarded to appellants a deed requiring the signatures of all three joint tenants. Mrs. Malkus, who had not signed the contract, apparently was unwilling to sign the deed, and so the sale did not close.
Bush sought and obtained from the title company a return of the purchase price which he had deposited. He then brought this suit against appellants for breach of contract, specific performance and fraud. Appellants asserted a plethora of defenses. Some were directed to the validity, vel non, of the contract, such as Bush's failure to accept appellants' offer in accordance with its terms, or the parties' mutual mistake of a material fact. Others were directed to the express contractual limitations on the vendee's remedies should the court find there was a binding contract. At the conclusion of the non-jury trial, the trial court denied any relief to Bush, finding that the parties did not have a binding contract because the vendors' offer had not been accepted in the manner which they had specified. That finding, of course, made it unnecessary for the court to consider the other defenses, and there is no indication in the record that the court did so.
After this court's opinion in Bush v. Ayer was filed, the Ayers filed a timely motion for rehearing in which they asserted that we had overlooked or failed to consider other defenses they had raised in the trial court (including the defense of mutual mistake of fact). Of course, the function of a motion for rehearing is to call to the court's attention some point of law or fact that the court has overlooked or misapprehended, see Goter v. Brown, 682 So.2d 155, 157-58 (Fla. 4th DCA 1996)(on rehearing). As Bush's reply to the motion correctly pointed out, the court did not overlook the matters raised in the motion for rehearing for the simple reason that none of those matters were argued in the briefs. It is a rather fundamental principle of appellate practice and procedure that matters not argued in the briefs may not be raised for the first time on a motion for rehearing, see Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958, 960 (Fla. 4th DCA 1983)(on rehearing), and on that basis, the motion was denied summarily.
Bush certainly viewed the opinion in Bush v. Ayer as mandating a judgment in his favor for he promptly filed in the lower court his Motion for Entry of Final Judgment Consistent With Mandate in which he stated as follows: "As the appellate court determined that `the parties had an enforceable contract for the sale of Lot 13,' the Plaintiff is entitled to a Judgment in its favor, requiring specific performance under the contract." Upon consideration of that motion, the court entered the judgment now before us.
Although appellants' point on this appeal raises the issue of mutual mistake of fact, they argue preliminarily (almost defensively) the reasons why that issue was not decided by this court's prior opinion. Appellee's answer brief does not even bother to respond on the merits to the issue of mutual mistake of fact; rather, it is devoted entirely to the argument that this court has previously ruled on the issue of mutual mistake of fact (as now raised by the appellants); therefore, the argument continues, additional review is prohibited by the doctrine of law of the case. In support of that position, appellee argues that (1) footnote 3 to our prior opinion indicated that we had considered the issue of mistake and rejected it as a means by which to affirm the initial judgment; (2) the fact that we found an "enforceable" contract between the parties means that we held the contract was not void due to mistake or other reason; and (3) this court, by its denial of appellants' motion for rehearing, explicitly rejected the issue of mistake as preventing the formation of *371 an enforceable contract.[1] We think the significance of both appellants and appellee placing such emphasis on what this court did or did not decide in Bush v. Ayer is indicative of the positions taken by the parties before the trial court on remand, and it simply confirms for us that the trial court was persuaded to construe our prior opinion much broader than we had intended it.
The sole issue before this court in Bush v. Ayer was whether the vendors had, by their conduct, waived strict compliance with the specified manner in which Bush was to accept their offer. We held that they had. However, in stating as our holding that the parties had an enforceable contract, we used language which we now perceive could have misled the trial court as to the extent of our holding. Enforceable means "capable of being enforced." Thus, perhaps somewhat defensively, we point out that our use of the word enforceable in describing the parties' contract, when viewed in the limited context of the sole issue before us on the prior appeal, was not wholly inappropriate. Nonetheless, we recognize that the use of such language, when viewed in a more general sense as appellee would have it, is susceptible of being construed as this court having placed its imprimatur on the contract's immunity against attack on its validity. Such a construction would, if correct, leave the trial court no opportunity, upon remand, to consider the viability of any remaining defense to the contract's validity.[2]
We are empathetic to a trial court faced with the task of trying to implement a mandate which leaves some doubt as to its scope or intent. Hopefully, we now make clear that which we may have failed to do before. Our opinion in Bush v. Ayer was neither intended, nor should it be construed, as our having (1) rejected or approved, implicitly or explicitly, the validity or sufficiency of any issue in the case other than that of waiver of strict compliance with the specified manner of acceptance of the offer, or (2) foreclosed to the trial court, upon remand, the opportunity to decide, as it might find appropriate, the remaining issues properly before it.[3]
The judgment is reversed and this cause remanded for further proceedings not inconsistent herewith. Upon remand, the court shall enter such judgment as it finds to be proper and just on the issues and evidence presented, including, if such be the case, a judgment of like result as that now before us.
REVERSED and REMANDED.
STONE and KLEIN, JJ., concur.
NOTES
[1] We find this latter argument somewhat disingenuous in light of appellee's response to the Ayers' motion for rehearing.
[2] Even were that construction correct, which it is not, it should not preclude the trial court, upon remand, from considering any contractual defense properly pled and proven.
[3] We felt that point was made clear by the comment in footnote 3, as well as by our noting that, upon remand, the trial court would be determining to what relief, if any, the plaintiff was entitled.